Genaro **CAMPOS**, Petitioner,

v.

Leonard **PORTUONDO**, Superintendent of Shawangunk Correctional Facility, Respondent.

No. 98 Civ. 6044(LMM).

United States District Court, S.D. New York.

Feb. 27, 2002.

Patrick F. Breen, Esq., Office of the District Attorney, Bronx County, Bronx, NY, for Respondent.

Richard M. Greenberg, Sara Gurwitch, Office of the Appellate Defender, New York City, for Genaro Campos.

### MEMORANDUM AND ORDER

McKENNA, District Judge.

By Report and Recommendation dated October 16, 2001 ("Report"), Magistrate Judge Gorenstein has recommended that the above petition for a writ of habeas corpus be denied. Petitioner has filed timely objections to the Report. This Court has considered those objections, and concurs with Judge Gorenstein's recommendation, for the reasons set forth in the Report. The writ is denied and the petition is dismissed.[1]

### REPORT AND RECOMMENDATION

GORENSTEIN, United States Magistrate Judge.

This petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is brought by Genaro Campos, currently an inmate at Clinton Correctional Facility in Dannemora, New York. On January 20, 1994, a jury returned a guilty verdict against Campos for Criminal Possession of a Weapon in the Third Degree under New York Penal Law § 265.02(4). On August 18, 1994, Campos was sentenced by Justice Steven Lloyd Barrett to 12 years-to-life.

### I. PROCEDURAL HISTORY

#### A. Evidence at Trial

The People called two witnesses at trial: Officer Craig Rudiger and Sergeant Mi-

1. This Court certifies, pursuant to 28 U.S.C. § 2253, that, as to all issues discussed in petitioner's objections to the Report, petitioner has made a substantial showing of the denial of a constitutional right.

chael Mulligan. They testified that on February 9, 1991, while on duty in the Bronx, a passerby directed their attention to Campos and a woman, who were having "possibly an argument" on Leland Avenue. (Tr. Rudiger 577–78; Mulligan 745).[1] After Campos saw that there were officers approaching him, he began to cross the street. (Tr. Rudiger 578–79). As the officers were following Campos on the street, Officer Rudiger saw Campos remove a large silver firearm from his waistband. (Tr. Rudiger 579). Officer Rudiger stopped and watched as Campos placed the firearm beneath an automobile. (Id.).

After the officers arrested Campos, Rudiger went to retrieve the handgun (Tr. Rudiger 579). The handgun turned out to be a fully loaded .357 Magnum. (Tr. Rudiger 580). When Campos was subsequently searched, Officer Mulligan recovered nine additional rounds of ammunition from Campos' pocket which fit the .357 Magnum. (Tr. Rudiger 580; Tr. Mulligan 748). Both officers identified Campos in open court. (Tr. Rudiger 581; Tr. Mulligan 747). The defense presented no evidence. (Tr. 808, 815).

### B. *Juror Nine and Juror Deliberations*

Following Officer Rudiger's testimony (but before Sergeant Mulligan testified), Juror Nine requested to be discharged because he said he had to return to work on the following day. (Tr. 701). The Judge informed him that he was expected to continue on the case as a juror and that his employer could take no adverse action against him because of his jury service. (Tr. 702). The next day, the juror told the judge that "maybe I may have judged the case before it is over." (Tr. 706). After further colloquy, the Judge concluded that the juror sought to be excused because of his desire to return to his job rather because of than any concern regarding bias. (Tr. 709).

Nonetheless, prior to summations, the trial court *sua sponte* called up Juror Nine to ask if he could continue to serve as an unbiased juror and offered that if he could not do so he would be excused. (Tr. 818–20). Juror Nine conceded that his partiality had not really been at issue and that he could continue to be "fair to both sides." (Tr. 821). The defense nonetheless made a motion to excuse Juror Nine, which the court denied. (Tr. 823). Counsel thereafter delivered summations and the jury was charged. (Tr. 832–917).

Later that same day—the first day of deliberations, January 18, 1994—the jury asked for a readback of portions of the officers' testimony. (Tr. 925). The case was adjourned until the next day. (Tr. 934).

Four hours into the second day of deliberations, January 19, 1994, the jury announced they were deadlocked. (Tr. 942). The defense and prosecution agreed that a charge pursuant to *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), was appropriate and the trial court provided one. (Tr. 942–45).[2] A few hours

---

1. "Tr." refers to the trial transcript of *People v. Campos,* Indictment No. 1341/91, Supreme Court, Bronx County.

2. The full text of the judge's charge was as follows:

Ladies and gentlemen, I received your note indicating that you're at this time have reached an impasse. I like to offer you the following observations and instructions.

First of all I like to begin by assuring you that it is not required that you reach a verdict. I don't want any of you to regard my remarks to you now feel that I am in any way instructing you that you must abandon the position that you now hold

later, following the luncheon recess, the jury asked for additional readbacks and pictures of the scene. (Tr. 946). Following deliberations, the jury submitted a note to the judge announcing that they had reached a verdict. (Tr. 948). About five to ten minutes later (Tr. 950), however, they sent out a note stating that they wanted to "rescind" the last note because they were "back to an impasse." (Tr. 948, 950). The defense moved for a mistrial, which the court denied. (Tr. 949–50). In a sidebar, the Court determined that the best approach would be to "cut off the deliberations to let everybody relax and we will start it up again tomorrow." (Tr. 952). After bringing out the jury, he charged as follows:

> Ladies and gentlemen, I received both of your last notes. The first one announces a verdict. The second note rescinds that note.
>
> And I have determined the following is the course of action, that may or may not be a popular one among you, but is based on many years of experience that I have concerning extended delibera-

tions. That is to take into account the amount of deliberations that have occurred particularly during the day in question, and I therefore seen this particular sequence, I think that the only appropriate thing to do now is to send you out overnight. So stop the deliberations for today. Send you to a hotel now. We like you all to relax. Stop thinking about the case for few hours. We will guarantee you not only a good meal tonight but actually put the heat on in the rooms. I hope that's not terribly unpopular or difficult for any of you. I know that you had not planned to be here overnight again, but it appears to the court that further discussions among the jurors should be had.

> That's not to say, I want to emphasize this, that the second note indicating an impasse is unacceptable to the court. I'm not saying that at all. I'm simply saying that coming as it did after an apparent agreement I think that it would be best if we took a period of relaxation and make one final effort on

> responsibly on the basis of your evaluation of the evidence.
>
> If you are unable to reach a verdict in this case so be it. At the same time I'm going to ask you to simply continue to deliberate. I'm asking you to do that, not to compel that you reach a decision or to abandon your views. I'm asking you only to listen to what each other has to say and see whether anybody else can persuade that your view is not correct.
>
> If you can't be persuaded then you are in fact obliged to stand by your view. Every jury has the absolute right to stand by his view regardless what the other jurors say. Doesn't matter whether eleven to one. Doesn't matter six to six. Every juror has to stand by the view that they have that they feel that there are correct after they have gone over the evidence, after they have reflected on the law, after they have determined what they believed to be the case.
>
> I'll go further to say no juror should ever feel obliged to abandon their view because

> it would be wrong for a juror to simply abandon their view simply to agree to the view of the other jurors, majority of the jurors.
>
> Having said that I still ask you to go back and continue to deliberate, listen to each other. I ask you to see what other people say. See if you can reflect on it in a new light. See if any prospective is in fact more appropriate than your prospective. See if you can try to persuade somebody else by checking again what you believe to be the truth in this case, but please also understand that I'm not directing you to reach a verdict. I'm not directing you to reach a verdict. I'm not commanding you to do anything other than to speak to each other, to listen to each on, and to see if you can resolve this matter. If you cannot, you're free to advise me that you cannot do. Thank you very much.
> (Tr. 943–45).

the part of the jury to see if we can resolve this case.

I reiterate what I told you before which is that you're not required to reach a verdict. I want to emphasize to you that I am not holding you hostage for the purpose of retaining you. I'm simply recognizing the notes that were received and came close to the time we normally would break. I have a responsibility to you to assure that you are taken care of in an appropriate manner and that means fed at a reasonable time and if need be housed. I don't see further deliberations now could be appropriate.

It is very close now to 8:00. You gone [sic] about seven hours. Also I don't believe sending you to a dinner break, you come back here until ten o'clock would serve any purpose. Certainly many of you look very tired.

At this time I can't accept the last note that you reached an impasse unequivocally and categorically because it follows very closely on the note that you reach a decision. Of course we prefer a decision. Just simply not the case that you must. You are obliged only to do what you believe in your conscience is required. Listen to your fellow jurors. Offer your views but ultimately you have an absolute right to stand by your views regardless what the other jurors say. I just simply indicate to you that I like you to make an effort to discuss the case tomorrow. If possible, I like to see if you can reach a verdict. If it is not possible, that's perfectly acceptable to the court.

Having said that I think I can break it down in thirty or forty words. We will send you down to a hotel, have dinner, have a nice rest. I'm going to call in advance right now to turn on the heat. And try not to discuss the case in small groups on any other matter from this point until tomorrow when you return to court after dinner. Have a good night's sleep.

I certainly want to say I appreciate the effort you put in the case regardless how this matter ultimately is resolved. I very greatly appreciate the effort. I know it's very difficult to be a juror and very difficult to discuss the case over a long period of time, we do appreciate that.

(Tr. 952–56).

The next morning, January 20, 1994, the trial judge opened the proceedings by informing counsel that he had a note from Juror Nine stating: "Your Honor, please [!] I would like to exercise the option you gave me last week, Thursday," (Tr. 957–58) an apparent reference to the judge's offer to Juror Nine prior to summations that he could be excused if he wished (Tr. 818–21). The Judge was about to inform the jury that the court would only consider notes by the foreman. (Tr. 960). While the court officer was going to get the jury, however, the jury sent out a note signed by the foreperson stating: "No further amount of deliberation will ever overcome the impasse." (Tr. 960–61). The time was 11:45 a.m. (Tr. 961). Defense counsel sought a mistrial. (*Id.*). The prosecutor, however, noted that "the day is still young" and that the jury had previously stated that it had reached a verdict, only to state thereafter that they were at an impasse. (Tr. 961). The prosecutor suggested that the Court give a "full" *Allen* charge. (Tr. 962). The Court concluded that he would give the jury "one final shot." (Tr. 962). The judge then gave the following charge:

Ladies and gentlemen of the jury, good morning. Welcome back. I have received a note from juror number nine which I was about to address you on when I received your next note indicating that in your view that further deliberations will not overcome the impasse.

Nothing that I say at this time should in any way shall be determative [sic] to suggest that you are required to reach a verdict. I told you that previously that you are acting within your rights under the system if you are unable to reach a verdict. Not withstanding that I am going to ask you to continue to deliberate. Lunch will be provided to you soon.

I am going to ask you to continue to make an effort to reach a verdict in this case. I'm going to ask you to do so because notwithstanding the fact that there is no problem, nothing wrong with a determination that you can't resolve the case. Eventhough [sic] it is more adviseable [sic] that a verdict is reached if that can be done consistent with the conscience of the jury. For that reason I ask you to continue and make a further effort to see whether or not the differences that exist can be resolved. In doing so I ask every juror regardless whichever way the vote is, I ask everyone of the jurors to reconsider their position and to listen to their fellow jurors and to determine whether something that these fellow jurors have said can and should persuade them to change their view. That doesn't necessarily mean that you will. It may resolve in the fact that other people will feel that their position should be changed and the possibility of an impasse is even stronger.

All I'm asking you to do is to listen to your fellow jurors. Listen to what they have to say, to re-evaluate your position, to determine whether you are in fact being correct in your assessment. Your fellow jurors are all I'm sure equally interested in reaching a fair, just and truthful verdict. Have in fact a better interpretation. That should be done regardless of who is speaking. Regardless whether the person speaking is in the minority position or majority position that's irrelevant. What's important is that you give further effort to open your mind and that you be receptive [sic].

Jury process of course is not designed to be finished. Jury process is, I'm sure you can attest, is not designed to be comfortble [sic] to everybody, but it is the best system that we have. Certainly there are certain instances which differences can't can resolved [sic] and that's fine, but we always try, as you can also attest, to see if we can resolve it because through the discussions among the jurors, through the deliberation process, experience has taught us that a jury is capable of speaking with a single voice and experience has taught us that even when jurors are sharply divided, open minded consideration, discussion, willingness to offer your views, willingness to listen to other views, willingness to reconsider is always desireable [sic] and in fact can be resolutions of matters that moments before seemed unresolveable [sic].

I am not in the jury room. I don't know how deliberations are going. I don't know what was said. For that reason I don't intend to suggest to you that I believe the case can be resolved. I only believe that you can make an effort to resolve the case. I know you were very close last night, and that very fact alone has given me reason to hope that further efforts may be successful. If not, so be it. Just make an effort.

With respect to the note that I received from juror number nine, first of all I like to say I am not able to entertain notes from individual jurors. I can only accept notes from the forepeson [sic] person signed by her in behalf of the jury. I therefore do not address specifically the points made by juror Number nine in this note.

I can say that there are at this point, until I discharge the entire jury, there

are no other options. Discharge one juror at this time is equivalent to discharging the entire jury. Because under the constitution only a fully apprised jury of twelve are able to render a decision.

I don't wish to try to interpret the note any further then to believe that your efforts are trying, and that you are doing exactly what you supposed to be doing and unfortunately suffering the pain of very difficult deliberations. With that alone I can't applaud you to act until you feel there is no possible resolution of this case. I ask you please to continue to deliberate.

I ask you to open your mind. I ask you to consider whether there are any possible ways which I can assist you. I of course can't be instructed what the vote is. I can't instruct you what you're arguing about, but perhaps I can assist you to consider the instructions of law or even testimony read back. Maybe you can examine some of the physical evidence that was received in case that you haven't looked at it. Maybe you can think of some way in which you can seek the assistance of the Court or examination or reexamination of new evidence, new way to allow you to resolve your differences. I certainly will respond as best we can to request further instructions, request for read back, request for physical evidence any other reasonable request.

I thank you ladies and gentlemen.

(Tr. 967–72). Within an hour, the jury returned with a guilty verdict. (Tr. 981).

### C. *Direct State Court Appeals*

Represented by counsel, Campos appealed to the Appellate Division, First Department, raising a number of grounds attacking his judgment of conviction, including his claim that the trial court im-

properly coerced a guilty verdict by giving repeated *Allen* charges in response to the jury's notes of deadlock, in violation of his federal constitutional rights, and that the judge improperly responded to Juror Nine's request to be excused. *See* Brief for Defendant–Appellant, filed January 24, 1997 (reproduced as Exhibit C to Petition for A Writ of Habeas Corpus By A Person in State Custody (hereinafter "Habeas Petition")) at 2.

The judgment of conviction was affirmed by the Appellate Division, First Department, on May 8, 1997. *People v. Campos,* 239 A.D.2d 185, 657 N.Y.S.2d 49 (1st Dep't 1997). With respect to the jury coercion issue, the Appellate Division held that because

> of the jury's continuous deliberations, requests for readbacks and instructions, and retracted announcement that it had reached a verdict, the court properly exercised its discretion in declining to declare a mistrial and, instead, delivering several *Allen* [ ] charges... Defendant's remaining claims relating to the court's *Allen* charges are unpreserved and without merit.

*Id.* at 185, 657 N.Y.S.2d 49 (internal citations omitted). The Appellate Division also stated that "[d]efendant's contention concerning the court's response to a note from an individual juror is unpreserved and we decline to review it in the interest of justice." *Id.* at 186, 657 N.Y.S.2d 49 (citation omitted).

Campos sought leave to appeal to the New York Court of Appeals. Campos's first letter enclosed copies of the parties' First Department briefs without making specific reference to any issues being raised. *See* Letter from Edward J. Ungvarsky to Chief Judge Judith S. Kaye of the New York Court of Appeals (reproduced in Exhibit E to Habeas Petition).[3]

---

**3.** Because the Appellate Division's order was entered May 8, 1997, the date of this letter—

After Judge Wesley was assigned to hear the request for leave to appeal, Campos submitted a second letter, dated June 23, 1997, arguing that the trial court coerced a verdict by issuing three *Allen* charges in response to the multiple jury declarations of deadlock. *See* Letter from Richard M. Greenberg and Edward J. Ungvarsky to Judge Richard C. Wesley of the New York Court of Appeals (reproduced in Exhibit E to Habeas Petition). This letter made no mention of the claim—raised in the Appellate Division—that the third *Allen* charge improperly failed to advise jurors not to surrender their conscientiously held beliefs. *See* Brief for Defendant–Appellant, filed January 24, 1997 (reproduced as Exhibit C to Habeas Petition) at 18–20.

Leave to appeal from the decision of the Appellate Division to the New York Court of Appeals was denied on August 25, 1997. *See People v. Campos,* 90 N.Y.2d 902, 663 N.Y.S.2d 514, 686 N.E.2d 226 (1997). Campos did not apply for a writ of certiorari to the United States Supreme Court. He also did not collaterally attack his conviction in state court.

### D. *The Federal Habeas Petition*

Campos's petition for a writ of habeas corpus was filed on August 25, 1998. The respondent submitted its opposition on June 25, 1999. Following additional briefing, the matter was referred to a Magistrate Judge on March 8, 2000, for Report and Recommendation. On April 20, 2001, the petition was redesignated to the undersigned for decision.

## II. *DISCUSSION*

### A. *Exhaustion and Procedural Bar*

■ Habeas corpus relief under 28 U.S.C. § 2254 is available to a petitioner in state custody in violation of the Constitution or a federal law or treaty. *See* 28

February 9, 1997—is apparently a misprint.

U.S.C. § 2254(a). "Before a federal court may grant habeas relief to a state prisoner," however, "the prisoner must exhaust his remedies in state court." *O'Sullivan v. Boerckel,* 526 U.S. 838, 842, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999); *see* 28 U.S.C. § 2254(b)(1)(A). "Because the exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts, ... state prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel,* 526 U.S. at 845; *accord Daye v. Att'y Gen. of the State of New York,* 696 F.2d 186, 190–91 (2d Cir.1982).

Campos makes two arguments in support of his claim that the trial judge violated his due process rights by coercing the jury to reach a verdict. He argues that it was improper to refuse to accept the jury's three statements that they were deadlocked. Memorandum in Support of Petition for Habeas Corpus ("Pet.Mem.") at 13–32. He also argues that the trial court erred by failing to include in the third *Allen* charge any instruction that the jurors should not abandon their conscientiously held beliefs. Pet. Mem. at 22–27.

■ Campos properly exhausted his claim regarding the alleged impropriety of the multiple *Allen* charges by presenting it in federal constitutional terms both to the Appellate Division and in his application for leave to appeal to the Court of Appeals. *See, e.g., Duncan v. Henry,* 513 U.S. 364, 365–66, 115 S.Ct. 887, 130 L.Ed.2d 865 (1995); *Picard v. Connor,* 404 U.S. 270, 275–76, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Morgan v. Jackson,* 869 F.2d 682, 684 (2d Cir.1989). The Appellate Division

considered the claim on the merits and leave to appeal was denied.

■ The same cannot be said, however, of his argument that the third *Allen* charge improperly failed to advise jurors not to surrender their conscientiously held beliefs. Campos never objected to the text of the third *Allen* charge before the trial court. While the argument regarding the text of this charge was presented to the Appellate Division, *see* Brief for Defendant–Appellant, filed January 24, 1997 (reproduced as Exhibit C to Habeas Petition) at 18–20, the Appellate Division found that all of Campos' arguments regarding the *Allen* charges (other than his claim that it was improper to have given three *Allen* charges) were "unpreserved and without merit." *People v. Campos*, 239 A.D.2d 185, 185, 657 N.Y.S.2d 49 (1st Dep't 1997).

■ The Appellate Division's ruling on this claim by itself bars habeas review of the text of the third *Allen* charge. "[F]ederal habeas review is foreclosed when a state court has expressly relied on a procedural default as an independent and adequate state ground, even where the state court has also ruled in the alternative on the merits of the federal claim." *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990); *accord Harris v. Reed*, 489 U.S. at 264 n. 10 ("as long as the state court explicitly invokes a state procedural bar rule as a separate basis for decision," the adequate and independent doctrine "curtails reconsideration of the federal issue on federal habeas").[4] As Campos has not shown cause for the default, prejudice or a "fundamental miscarriage of justice," *Harris v. Reed*, 489 U.S. at 262, 109 S.Ct. 1038, the claim regarding the text of the third

*Allen* charge may not be heard by this Court.

■ The Court could not hear this claim for an entirely separate reason: Campos never presented it in his letters seeking leave to appeal to the Court of Appeals. To exhaust a claim under 28 U.S.C. § 2254(b), the petitioner must "(i) present[ ] the federal constitutional claim asserted in the petition to the highest state court (after preserving it as required by state law in lower courts) and (ii) inform[ ] that court (and lower courts) about both the factual and legal bases for the federal claim." *Ramirez v. Attorney General*, No. 99–2047, 2001 WL 1028326 at * 5 (2d Cir. September 7, 2001) (citing *Picard v. Connor*, 404 U.S. 270, 276–77, 92 S.Ct. 509, 30 L.Ed.2d 438 (1971); *Daye*, 696 F.2d at 191–92). As already noted, Campos's first letter to the Court of Appeals enclosed copies of the parties' First Department briefs (as required by N.Y. Ct. Rule § 500.10(a)) but made no request that the Court consider the issues raised in his brief. *See* Letter from Edward J. Ungvarsky to Chief Judge Judith S. Kaye of the New York Court of Appeals (reproduced in Exhibit E to Habeas Petition). Once a judge was assigned to hear the request, Campos' second letter, dated June 23, 1997, argued solely that the trial court coerced a verdict by issuing three *Allen* charges in response to the multiple jury declarations of deadlock. *See* Letter from Richard M. Greenberg and Edward J. Ungvarsky to Judge Richard C. Wesley of the New York Court of Appeals (reproduced in Exhibit E to Habeas Petition). This letter focused exclusively on the coerciveness of giving three *Allen* charges.

---

4. The language used by the Appellate Division in Campos' case is in contrast with the language used in those cases where the state court found a claim to be "either meritless *or* unpreserved." Unlike the conjunctive "and," the use of the disjunctive "or" in such cases obviously does not clarify whether the court's ruling rests on a procedural bar. *See, e.g., Tankleff v. Senkowski*, 135 F.3d 235, 247 (2d Cir.1998).

While the letter also refers to "other circumstances" supporting the defense request for a mistrial, *id.* at 1, those circumstances specifically did not include any complaint regarding the text of the third *Allen* charge. *See also id.* at 5–6 (listing "circumstances" that made the three charges coercive but omitting any mention of the text of the charges).

This matter is controlled by *Grey v. Hoke*, 933 F.2d 117 (2d Cir.1991). In *Grey*, the petitioner had sent the Court of Appeals a letter requesting leave to appeal. His letter mentioned only one claim and attached his Appellate Division brief which had argued that claim along with two others. The Court held that the submission of the brief was insufficient to inform the Court of Appeals that leave was being sought with respect to claims other than the sole claim mentioned in the letter. *Id.* at 120. Virtually the same situation occurred here, except that Campos enclosed his brief in a letter separate from the letter that argued his claim. This distinction is irrelevant to the issue of exhaustion because neither in *Grey* nor here did the petitioner alert the Court of Appeals that any issue was being argued other than the one specifically raised. As the Court noted in *Jordan v. Lefevre*, 206 F.3d 196 (2d Cir.2000), "[p]etitioner's counsel has the obligation to set out . . . arguments [for which review is sought]. Counsel may not transfer to the state courts the duty to comb through an applicant's appellate brief to seek and find arguments not expressly pointed out in the application for leave." *Id.* at 199 (no exhaustion where counsel argued one claim in the first three paragraphs of his application for leave and in the fourth paragraph asked that he be given permission to appeal "[f]or all of these reasons and the reasons set forth in his Appellate Division briefs."). As was true in *Jordan*, Campos' discussion of his single claim at length along with the submission attaching a brief containing addi-

tional claims "[did] not fairly apprise the state court of those remaining claims." *Id* at 198. Thus, for this reason as well, Campos' claim regarding the text of the third *Allen* charge cannot be reviewed by this court.

## B. *Standard of Review*

The Antiterrorism and Effective Death Penalty Act of 1996, P.L. No. 104–132, 110 Stat. 1214 ("AEDPA"), provides that

[a]n application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . .

28 U.S.C. § 2254(d).

 As an initial matter, Campos' claim is based on "clearly established Federal law, as determined by the Supreme Court." While the reasoning in the case of *Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896), rests on the supervisory power of the federal courts, the issue of jury coercion is of federal constitutional dimension. *See, e.g., Lowenfield v. Phelps*, 484 U.S. 231, 240–41, 108 S.Ct. 546, 98 L.Ed.2d 568(1988) (reviewing jury charge in state habeas petition for "constitutional" error); *Smalls v. Batista*, 191 F.3d 272, 277 (2d Cir.1999) (same). Indeed, New York State itself has recognized that the propriety of *Allen* charges must be judged on federal constitutional principles. *See, e.g., People v. Antommarchi*, 80 N.Y.2d 247, 252–53, 590 N.Y.S.2d 33, 604 N.E.2d 95 (1992). Through its invocation of the *Allen* case, the Appellate Division was obviously not adverting to the

supervisory power of the federal courts but rather was addressing Campos' claim of unconstitutionally improper jury coercion. As a result, the decision in Campos' case thus necessarily involved an application of "clearly established Federal law" for purposes of 28 U.S.C. § 2254(d)(1). *See Sellan v. Kuhlman,* 261 F.3d 303, 309 (2d Cir.2001).

■ In addition, the Second Circuit has recently concluded that the AEDPA standard applies regardless of whether the state court has even discussed the federal claim or any federal law in an opinion adjudicating the state law conviction. 261 F.2d at 312. *See also id.* at 311 ("Nothing in the phrase 'adjudicated on the merits' requires the state court to have explained its reasoning process."). All that is required to trigger the statutory standard of review is the issuance of "a decision finally resolving the parties' claims, with res judicata effect, that is based on the substance of the claim advanced, rather than on a procedural, or other, ground." *Id.* Such was the case here.

■ The AEDPA standard requires this Court to determine if the New York courts' adjudication was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). The Supreme Court has held:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions

but unreasonably applies that principle to the facts of the prisoner's case. *Williams v. Taylor,* 529 U.S. 362, 412–13, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000). The term "unreasonably" in the statute means that "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." *Williams v. Taylor,* 529 U.S. at 411.

### C. The Merits of Campos' Claim

■ When jurors express an inability to arrive at a verdict, a trial judge has discretion to give the jury a charge urging them to deliberate further. *See, e.g., Lowenfield v. Phelps,* 484 U.S. 231, 237–38 & n. 1, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). The Second Circuit has consistently approved the use of such a charge in the face of apparent deadlock "as long as such a charge is carefully crafted to avoid coercing jurors." *United States v. Fermin,* 32 F.3d 674, 680 (2d Cir.1994), *overruled on other grounds,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995); *accord Smalls v. Batista,* 191 F.3d at 278; *United States v. Melendez,* 60 F.3d 41, 51–52 (2d Cir.1995), *vacated on other grounds,* 516 U.S. 1105, 116 S.Ct. 900, 133 L.Ed.2d 834 (1996). This charge is typically referred to as an "*Allen* charge," deriving from the jury instructions approved in *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The propriety of an *Allen* charge turns on whether it tends to coerce undecided jurors into reaching a verdict by "abandoning without reason conscientiously held doubts." *United States v. Ruggiero,* 928 F.2d 1289, 1299 (2d Cir. 1991) (citing cases). The trial court retains discretion to determine under what set of circumstances to give an *Allen* charge. *United States v. Hynes,* 424 F.2d

754, 758 (2d Cir.1970). The Second Circuit has refused to draw "fine lines" that would "circumscribe the trial court's discretion" as to when and under what circumstances the trial court may give such a charge. *See, e.g., id.* at 758.

■ The Supreme Court has not ruled on the question of whether more than one *Allen* charge is proper; but the Second Circuit has held that it "do[es] not regard a repeated *Allen* charge as inevitably coercive." *Ruggiero,* 928 F.2d at 1299 (citing *United States v. Roman,* 870 F.2d 65, 77 (2d Cir.), *cert. denied,* 490 U.S. 1109, 109 S.Ct. 3164, 104 L.Ed.2d 1026 (1989)); *United States v. O'Connor,* 580 F.2d 38, 44 (2d Cir.1978); *United States v. Robinson,* 560 F.2d 507, 517–18 (2d Cir.1977) (en banc), *cert. denied,* 435 U.S. 905, 98 S.Ct. 1451, 55 L.Ed.2d 496 (1978). While that view is not unanimous, other circuits have also approved the giving of multiple *Allen* charges. *See, e.g., United States v. Barone,* 114 F.3d 1284, 1305 (1st Cir.) (two Allen charges are not *per se* coercive and "each [Allen charge] case must be judged on its own facts"), *cert. denied* 522 U.S. 1021, 118 S.Ct. 614, 139 L.Ed.2d 500 (1997); *United States v. Seeright,* 978 F.2d 842, 850 (4th Cir.1992) (court has "considerable discretion" in deciding how many *Allen* charges to give to the jury); *United States v. Reed,* 686 F.2d 651 (8th Cir.1982) (giving two *Allen* charges is not *per se* coercive); *United States v. Fossler,* 597 F.2d 478 (5th Cir.1979) (impact of two *Allen* charges must be assessed in light of the judge's language and facts and circumstances that form the context of the multi-

ple charges); *but see United States v. Seawell,* 550 F.2d 1159, 1163 (9th Cir.1977) ("it is reversible error to repeat an Allen charge in a federal prosecution in this circuit after a jury has reported itself deadlocked and has not itself requested a repetition of the instruction"). Obviously, with each successive *Allen* charge, "the chances of coercion may increase with each successive appeal by the court to the jurors to try to reach a verdict." *Robinson,* 560 F.2d at 517.

■ It is certainly not common for a situation to arise where three *Allen* instructions are given to a jury.[5] But neither the Supreme Court nor the Second Circuit has ever announced a *per se* bar to this practice. Rather, the propriety of an *Allen* charge depends on whether it "tends to coerce undecided jurors ... to abandon, without any principled reason, doubts that any juror conscientiously holds as to a defendant's guilt." *Smalls v. Batista,* 191 F.3d 272, 278–79 (2d Cir.1999); *accord Robinson,* 560 F.2d at 517 (validity of charge "depends on whether it tends to coerce undecided jurors into reaching a verdict by abandoning without reason conscientiously held doubts"). One of the touchstones that demonstrates a lack of juror coercion is the inclusion of cautionary language counseling jurors not to surrender any conscientiously held views. *Smalls,* 191 F.3d at 279; *Ruggiero,* 928 F.2d at 1299. Such language is viewed as "negat[ing] coercion." 982 F.2d at 1299 (citing cases). Accordingly, it is a requirement that the jury charge contain some

5. The Court is aware of one case where *Allen* instructions were given to the jury on three occasions during the course of a trial (though not all in the course of deliberations, not all in response to a statement of deadlock, and not all in oral form). In *United States v. Ailsworth,* 138 F.3d 843, 851–52 (10th Cir. 1998), the court first gave an *Allen* instruction to the jury when it charged the jury before

deliberations began. The second *Allen* instruction occurred after the jury deliberated for four days, returned a partial verdict, and announced that it was deadlocked. Finally, the jurors also were given a written copy of the second *Allen* instruction when they reentered deliberations the following day. The Tenth Circuit found no error in the court's actions. *Id.* at 852.

"cautionary language which would discourage jurors from surrendering their own conscientiously held beliefs." *Smalls,* 191 F.3d at 278.[6]

 Here, the trial court's instructions, quoted at length in section I.B above, were filled with admonitions to the jury that negated any possible coercive effect arising from the *Allen* charges themselves. The trial court either advised the jury that it need not reach a verdict— or that the court would accept that they had deadlocked—on three occasions during its first charge (Tr. 943 lines 22–24; Tr. 944 lines 6–7; Tr. 945 lines 17–24); on four occasions during its second charge (Tr. 953 line 25—Tr. 954 line 4; Tr. 954 lines10–12; Tr. 955 lines 11–12; Tr. 955 lines 21–22); and on five occasions during its final charge (Tr. 967 lines 9–14; Tr. 967 lines 20–23; Tr. 968 lines 13–17; Tr. 969 lines 13–15; Tr. 970 lines 7–9, 14). In addition, the trial judge repeatedly reminded the jurors that they should not relinquish any view which they held in good conscience: five times during the first charge (Tr. 943 line 24—Tr. 944 line 4; Tr. 944 lines 9–11; Tr. 944 lines17–19; Tr. 944 lines 20–25; Tr. 945 lines 3–8); twice during the second charge (Tr. 955 lines 12–13; Tr. 955 lines 14–17) and once during the final charge, albeit not in terms as explicit as the first two charges. *See* Tr. 967 line 24—Tr. 968 line 1 ("it is more adviseable [sic] that a verdict is reached *if that can be done consistent with the conscience of the jury* ") (emphasis added); *see also* Tr. 968 lines 7–13 ("I ask everyone of the jurors to reconsider their position and to listen to their fellow jurors and to determine whether something that these fellow jurors

have said can and should persuade them to change their view. *That doesn't necessarily mean that you will.*") (emphasis added). This case is thus in contrast with *Smalls v. Batista,* 191 F.3d 272 (2d Cir.1999), where the trial judge repeatedly told jurors that they had a responsibility to persuade other jurors without ever suggesting that they should not surrender their own beliefs. *Id.* at 280.

Moreover, the trial judge's instructions never singled out a minority of jurors, normally of great concern in cases of this kind. *See, e.g., Smalls v. Batista,* 191 F.3d at 280–81. Nor did he insist on a verdict or even hint that a hung jury was an unacceptable result in the case. *Cf. Jenkins,* 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965) (error where judge stated to jury "[y]ou have got to reach a decision in this case").

The Supreme Court has emphasized the importance of examining the context and circumstances under which an *Allen* charge is given. *See Lowenfield,* 484 U.S. at 237; *Jenkins,* 380 U.S. at 446. Significantly, the second note from the jury stating that there was an "impasse" was preceded by a note stating that the jurors had actually reached a verdict. (Tr. 946). Thus, it was reasonable for the trial judge to conclude that this particular jury was in fact capable of reaching a verdict. The second *Allen* charge was in direct response to the two conflicting notes. The trial judge stated to the jury: "I'm simply saying that coming as [the impasse note] did after an apparent agreement I think that it would be best if we took a period of relaxation and made one final effort on the part

---

6. Because of this requirement, it is impossible to address Campos claim regarding the coerciveness of the three *Allen* charges without also addressing the text of the *Allen* charges themselves. This is true even though, as noted in section II.A, Campos failed to exhaust his specific objections to the text of the third

*Allen* charge. While this Court might enforce the exhaustion requirement by assuming the propriety of the text of the third *Allen* charge, it is unnecessary to do so because even a consideration of the text of the charge shows that it was not unduly coercive.

of the jury to see if we can resolve this case." (Tr. 954). Later in the charge, he said: "At this time I can't accept the last note that you reached an impasse unequivocally and categorically because it follows very closely on the note that you reach a decision." (Tr. 955).

Similarly, the court suggested to the jury that it was getting the third *Allen* charge because, as he put it: "I know you were very close last night, and that very fact alone has given me reason to hope that further efforts may be successful. If not, so be it. Just make an effort." (Tr. 970). Thus the jury understood that it was their own equivocal conduct in claiming to have reached a verdict that led to the continued deliberations rather than the trial judge's insistence that he would never accept a genuine statement of impasse.

While none of the charges are on their face coercive, the final charge given by the trial court is in particular a model of noncoerciveness. The judge told the jurors that "you are acting within your rights under the system if you are unable to reach a verdict" (Tr. 967 lines 12–14) and that there is "nothing wrong with a determination that you can't resolve the case" (Tr. 967 lines 22–23). He acknowledged that further deliberations might make "[the possibility] of an impasse is even stronger." (Tr. 968). He told the jury that: "I don't intend to suggest to you that I believe the case can be resolved." (Tr. 970). All of these statements would have made plain to the jury that the judge did not require them to reach a verdict.

Campos focuses on the fact that the final verdict occurred less than an hour after the third *Allen* charge. Pet. Mem. at 8, 17, 25–26. *See, e.g., United States v. Burke,* 700 F.2d 70, 80 (2d Cir.1983) ("the length of time between the court's instruction and the actual rendering of the jury verdict [2 days] is probative of the fact that the jury was not coerced or unduly influenced by the judge's remarks"); *United States v. Barash,* 412 F.2d 26, 32 (2d Cir.1969) (three hours between charge and verdict indicated the negation of any associative *Allen* coercion). The Second Circuit, however, has made clear that "[t]he length of time it takes a jury to reach a verdict after an *Allen* charge has been delivered is not a factor logically to be considered in determining whether the charge should have been given in the first place." *Melendez,* 60 F.3d at 51 (rejecting claim of jury coercion where verdict was reached one hour after deliberations following the charge); *accord Hynes,* 424 F.2d at 758 (*Allen* charge upheld where jury reached verdict five minutes afterwards); *see also Lowenfield,* 108 S.Ct. at 549, 552 (*Allen* charge upheld in death penalty case where the recitation of facts indicated that the verdict had been reached thirty minutes after the charge was given.).[7]

For all of the above reasons, the state court's judgment upholding Campos' conviction did not represent an "unreasonable application" of Supreme Court precedent prohibiting jury coercion or an unreasonable refusal to extend existing Supreme Court precedent. *See Williams,* 529 U.S. at 412–13.

---

7. Campos also complains about the retention of Juror Nine. Pet. Mem. at 17–18. This issue is unexhausted for the same reasons stated in section II.A above with respect to the claim regarding the text of the third *Allen* charge. In any event, this juror had falsely claimed bias in order to avoid jury service (Tr. 708, 821) and thus was properly retained on the jury. He had even declined the trial judge's offer to excuse him. (Tr. 818–20). Because there was no basis for believing that he was a minority juror in this matter, his retention is irrelevant to any claim that the jury felt coerced.

*Conclusion*

Campos' petition should be denied.

## PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have ten (10) days from service of this Report to file any written objections. *See also* Fed.R.Civ.P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Lawrence M. McKenna, 500 Pearl Street, New York, New York 10007, and to the chambers of the undersigned at 40 Centre Street, New York, New York 10007. Any requests for an extension of time to file objections must be directed to Judge McKenna. The failure to file timely objections will result in a waiver of those objections for purposes of appeal. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).

Oct. 16, 2001.