Kevin SMALLS, Petitioner–Appellee,

v.

Wilfredo BATISTA, Superintendent, Marcy Correctional Facility, Respondent–Appellant.

No. 98–2526.

United States Court of Appeals, Second Circuit.

Argued May 12, 1999.

Decided July 30, 1999.

Elizabeth F. Bernhardt, Assistant District Attorney, Bronx County, Bronx, N.Y. (Robert T. Johnson, District Attorney for Bronx County, Joseph N. Ferdenzi, Assistant District Attorney, Bronx County, Bronx, NY, of counsel), for appellant.

Jeffrey I. Richman, New York City (M. Sue Wycoff, New York City, of counsel), for appellee.

BEFORE: MESKILL, PARKER and SOTOMAYOR, Circuit Judges.

MESKILL, Circuit J.

Appellant Wilfredo Batista, Superintendent of the Marcy Correctional Facility (state) appeals from an order of the United States District Court for the Southern District of New York, Sweet, *J.*, granting petitioner-appellee Kevin Smalls' petition for a writ of habeas corpus. Smalls petitioned for the writ pursuant to 28 U.S.C. § 2254 on the grounds that the trial court's supplemental jury charge deprived him of his constitutional rights to due process of law and to an uncoerced jury verdict of guilt beyond a reasonable doubt. We affirm the grant of the writ by the district court.

## BACKGROUND

### A. *Facts of the Underlying Offense*

The facts that led to the prosecution in this case were established at trial and set forth clearly in the district court's opinion, *Smalls v. Batista,* 6 F.Supp.2d 211, 214–15 (S.D.N.Y.1998); only a few facts will be repeated here.

In the pre-dawn hours of November 23, 1986, 17 year old Lang Faulcon left a subway train at Jackson Avenue, the Bronx. Smalls and five other men, who had been watching Faulcon, got off the train and pursued him. When Faulcon started to run away, Smalls grabbed him, put him in a choke-hold and said, "we want your coat, take your coat off." One of the men kicked Faulcon's hand and he released his coat. Faulcon's coat, watch, glasses and gloves were taken during the attack.

Later that morning, Faulcon reported the incident to the Transit Police, describing the sequence of events and the assailants. Faulcon maintained that even though the assault occurred early in the morning and the train was dimly lit, he was able to see the faces of his assailants. One week later, Faulcon was unable to identify the robbers in the Transit Police photograph book. After going through the book a second time he identified Smalls. Nearly three months later, Faulcon identified Smalls in a lineup at the 48th Precinct and Smalls was arrested.

## B. *The Trial*

At the 1987 trial, the prosecution called only Faulcon and a Transit Police detective, who testified that the waiting area where Faulcon was standing before the attack was brightly lit. Smalls offered no evidence in his defense at trial.

At 8:25 p.m. on the first day of deliberations, after deliberating for four hours and hearing readbacks of Faulcon's testimony, the jury sent a note to the court stating, "[t]he decision is 11 to 1, and we are unable to come to a conclusion." In response, the trial judge informed the attorneys that he was going to give the jury a supplemental charge asking them to go back and discuss the case amongst themselves and to express their opinions and listen to the opinions of the other jurors. The court also indicated that it would encourage the jurors to try to convince one another that their views were correct and wanted to remind the jurors that they should be willing to change their minds. The court stated that such a charge was "not an *Allen* charge" and that it did not want to give the jurors an *Allen* charge at this early stage in the proceedings.[1]

Defense counsel objected to the proposed charge, asserting that it was more prejudicial than an *Allen* charge and that, in light of the jury's position, such a charge would amount to urging eleven jurors to convince one. Over the defense counsel's objection, the court read the following instructions to the jurors:

Now, you have had the case for some four to five hours, taking off your time for supper.

I will ask you to go back and again discuss this amongst yourselves. You should not be afraid to express your opinions and views. If you believe your opinions and views are correct, then you should make every effort to convince the others whether it be one of eleven, two out of twelve, whatever number it may be, to express your views.

If you believe your views are correct, then it is your responsibility as a juror to convince the others as to the correctness of the position of views that you have. You should continue to discuss the case.

If, after discussing your views and opinions with your fellow jurors, if you then feel that your views are no longer correct, you should be willing to change them, but if you believe your views are correct, then it is your responsibility as a juror to attempt to convince the others of the correctness of your views.

What I am asking you to do is to continue a free discussion. Discuss the issues, discuss the facts, and as you determine the facts to be, you should always be open to reason, you should not go to the juryroom and lock yourselves in the room and refuse to discuss the case.

Listen to the views of your fellow jurors, and express your personal views as well. I am not concerned what your views are. If you believe they are correct, it is your responsibility to convince the others, have them switch, have them adopt your views, but discuss it.

Please, return to the juryroom.

The jury, after further deliberations, was unable to reach a verdict and was sequestered overnight. The next day the jury again heard readbacks of Faulcon's testimony and delivered a verdict convicting Smalls of robbery in the second degree. Smalls was sentenced to an indeter-

---

**1.** The term *"Allen* charge" is a generic term used for a type of supplemental instruction that is given to a deadlocked jury, first approved by the Supreme Court in *Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). A traditional *Allen* charge reminds the jurors about the importance of obtaining a verdict and encourages jurors to listen "to each other's arguments" while also emphasizing that "the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows." *Id.* at 501, 17 S.Ct. 154.

minate term of incarceration of two to six years.

Smalls appealed to the New York State Supreme Court, Appellate Division, First Department, arguing, *inter alia*, that the improper supplemental *Allen* charge violated his rights under the United States Constitution to a fair trial and due process. The Appellate Division unanimously affirmed the conviction, finding, *inter alia*, that "[t]he court's Allen charge was appropriate, since it reminded the jurors of their duty to deliberate and did nothing to urge any jurors to surrender their conscientiously held positions." *People v. Smalls*, 237 A.D.2d 116, 116, 654 N.Y.S.2d 362, 362 (1st Dep't 1997). The Appellate Division also found that the charge was not coercive because the jury had requested readbacks of the testimony and had deliberated for another day after the charge had been given. *Id.* Leave to appeal to the New York Court of Appeals was denied on May 19, 1997. *See People v. Smalls*, 89 N.Y.2d 1100, 660 N.Y.S.2d 394, 682 N.E.2d 995 (1997).

C. *The Petition for Writ of Habeas Corpus*

In August 1997, Smalls filed this petition for a writ of habeas corpus, pursuant to 28 U.S.C. § 2254, in the United States District Court for the Southern District of New York. Smalls claimed that the trial court's supplemental charge improperly instructed jurors that they had a responsibility to convince the others and that the charge failed to instruct them that they were not to abandon their conscientiously held views. In an opinion dated May 19, 1998, the district court granted Smalls' request for a writ, holding that the *Allen*

charge was coercive and violated his right to due process under the Fourteenth Amendment, and that the error was not harmless. *See Smalls*, 6 F.Supp.2d at 222–23.

On June 11, 1998, the state filed both a notice of appeal and a motion to vacate the judgment of the district court pursuant to Fed.R.Civ.P. 60(b)(4). We dismissed the appeal for failure to secure a certificate of appealability and later vacated that order and reinstated the state's appeal.

The district court then addressed the state's Rule 60(b) motion, which argued that the district court lacked jurisdiction because Smalls could not be deemed "in custody" from his 1987 robbery conviction at the time his petition was filed because that sentence would have expired on March 24, 1993.[2] In response, Smalls asserted that he was "in custody" because he was serving three aggregate sentences for subsequent crimes committed in 1991 and 1994. Indeed, the state conceded this fact by providing record evidence from the Department of Correctional Services, which calculated that Smalls was serving the aggregate of his 1987, 1991 and 1994 sentences since his return to the Department of Correctional Services in 1994.

■ The district court denied the motion,[3] adopting the reasoning of the Supreme Court in *Garlotte v. Fordice*, 515 U.S. 39, 115 S.Ct. 1948, 132 L.Ed.2d 36 (1995), which articulated that " 'a prisoner serving consecutive sentences is "in custody" under any one of them' for purposes of the habeas statute." *Id.* at 45, 115 S.Ct. 1948 (quoting *Peyton v. Rowe*, 391 U.S. 54, 67, 88 S.Ct. 1549, 20 L.Ed.2d 426 (1968)).

**2.** In order for a district court to entertain a petition for a writ of habeas corpus from a state court judgment, the petitioner must be "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *see also* 28 U.S.C. § 2241(c)(3).

**3.** We note that the district court had jurisdiction to entertain and deny this Rule 60(b)

motion even though a notice of appeal had been filed in this Court. *See Toliver v. County of Sullivan*, 957 F.2d 47, 49 (2d Cir.1992) (holding that district court can deny a Rule 60(b) motion after a notice of appeal has been docketed, but that remand by the court of appeals is required if the district court is inclined to grant such motion).

The district court concluded that "[b]ecause the records submitted reflect that Smalls was serving the aggregate of his 1987, 1991, and 1994 sentences from 1994 to the present, he was 'in custody' within the meaning of §§ 2241(c)(3) and 2254(a) on the 1987 conviction at the time he filed his petition for habeas relief." *Smalls v. Batista*, 22 F.Supp.2d 230, 234 (S.D.N.Y. 1998).

The state then filed an amended notice of appeal. While that notice added the denial of the Rule 60(b) motion as an issue on appeal, the state failed to argue that issue in its brief or at oral argument, and we consider the issue abandoned.[4]

We have appellate jurisdiction to hear this appeal under 28 U.S.C. § 2253.

## DISCUSSION

### A. *Standards of Review*

■ "We review a district court's grant of a writ of habeas corpus *de novo*." *Jones v. Vacco*, 126 F.3d 408, 413 (2d Cir.1997). When analyzing habeas petitions involving state court trials, "[t]he issue that should be determinative in every case is whether the petitioner had a fair trial." *Agard v. Portuondo*, 117 F.3d 696, 717 (2d Cir.1997) (Van Graafeiland, *J.*, dissenting) (citing *Malley v. Manson*, 547 F.2d 25, 28 (2d Cir.1976)), *cert. granted*, — U.S. ——, 119 S.Ct. 1248, 143 L.Ed.2d 346 (1999). "When reviewing a habeas petition, '[t]he factual findings of the New York Courts are presumed to be correct.' " *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir.1997) (quoting *Green v. Scully*, 850 F.2d 894, 900 (2d Cir.1988)) (alteration in original).

■ When we examine a claim that a jury charge is erroneous, we review the jury instructions as a whole. "[A] challenged portion of the jury instructions 'may not be judged in artificial isolation,' but rather must be judged as the jury understood it, as part of the whole instruction, and indeed, as part of all the proceedings that were observed by the jury." *Chalmers v. Mitchell*, 73 F.3d 1262, 1267 (2d Cir.1996) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 38 L.Ed.2d 368 (1973)).

■ When reviewing jury instructions, "it must be established not merely that the instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to the defendant by the Fourteenth Amendment." *Cupp*, 414 U.S. at 146, 94 S.Ct. 396. The trial court has broad discretion to determine under what circumstances and how the charge should be given. *United States v. Civelli*, 883 F.2d 191, 195 (2d Cir.1989).

### B. *Exhaustion of Remedies*

■ Section 2254(b)(1) and (c) of 28 U.S.C. provide that a state prisoner seeking federal habeas corpus review of a state court conviction must first exhaust all remedies available in the state court. This requirement is grounded in principles of federal-state comity and " 'respect for our dual judicial system and concern for harmonious relations between the two adjudicatory institutions.' " *Jones*, 126 F.3d at 413 (quoting *Daye v. Attorney General of New York*, 696 F.2d 186, 191 (2d Cir.1982) (in banc)). On this appeal, as it did below, the state concedes that Smalls fairly presented his current constitutional claims in the state court proceedings and exhausted his remedies within the meaning of section 2254(b)(1) and (c).

### C. *The Merits*

■ The state argues that the district court improperly granted Smalls' writ of habeas corpus, relying on 28 U.S.C. § 2254(d)(1) and (2). That section provides that an application for a writ of

---

**4.** While we must examine subject matter jurisdiction *sua sponte,* the state's concession on the factual basis for the custody determina-

tion satisfies us that there is subject matter jurisdiction under section 2254.

habeas corpus overturning a state court's judgment should not be granted unless the state court proceedings either:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

■ It is well established that an inmate seeking a writ of habeas corpus has the burden of proving, by a preponderance of the evidence, that his or her constitutional rights have been violated. *See Jones*, 126 F.3d at 415; *see also Machado v. Commanding Officer*, 860 F.2d 542, 544 (2d Cir.1988). The state maintains that Smalls failed to meet his burden of establishing that his conviction is the result of state court proceedings that were contrary to, or involved an unreasonable application of, clearly established federal law. The district court disagreed, and we affirm that decision. This Court has yet to determine under what circumstances a state court decision is reviewed *de novo* to determine whether it is "contrary to" clearly established federal law, instead of being reviewed under the more deferential "reasonable application of" standard. We need not join either side of the existing circuit split [5] on this issue however, because the state court judgment in this case was both "contrary to [and] an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." *See* 28 U.S.C. § 2254(d)(1). We write to emphasize that the charge in question was unconstitutionally coercive because it *both* (1) obligated jurors to convince one another that one view was superior to another, *and* (2) failed to remind those jurors not to relinquish their own conscientiously held beliefs.

■ It is well recognized that jury deliberations constitute a "critical stage of a criminal trial," *United States v. Ruggiero*, 928 F.2d 1289, 1299 (2d Cir.1991), and that "[a]ny criminal defendant ... being tried by a jury is entitled to the uncoerced verdict of that body." *Lowenfield v. Phelps*, 484 U.S. 231, 241, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988). It has long been established that when a trial court receives notice that the jury is deadlocked it may give a charge, commonly referred to as an *"Allen"* charge, that urges the jurors to continue deliberations in order to reach a verdict. *See Allen v. United States*, 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896).

A supplemental jury charge, when used to encourage a verdict in the face of a deadlock, has been sanctioned by the Supreme Court, this Court and all other courts of appeals. *Lowenfield*, 484 U.S. at 237–38 & n. 1, 108 S.Ct. 546 (collecting cases). Indeed, "this circuit 'has consistently reaffirmed its approval of the supplementary charge to encourage a verdict in the face of an apparent deadlock.' " *Ruggiero*, 928 F.2d at 1299 (quoting *United States v. Hynes*, 424 F.2d 754, 757 (2d Cir.1970) (collecting cases)).

■ "Whether an *Allen* charge was appropriate in a given case hinges on whether it tends to coerce undecided jurors into

---

5. Some courts have decided that any state court judgment involving a mixed question of law and fact is entitled to deference and may only be overturned if it was an unreasonable application of clearly established federal law. *See, e.g., Lindh v. Murphy*, 96 F.3d 856 (7th Cir.1996), *rev'd on other grounds*, 521 U.S. 320, 117 S.Ct. 2059, 138 L.Ed.2d 481 (1997); *Drinkard v. Johnson*, 97 F.3d 751 (5th Cir. 1996). Other courts have rejected the distinction between questions of pure law and mixed questions of law and fact, holding that if the Supreme Court has announced a rule that governs the case, then the state court judgment is subject to *de novo* review. *See, e.g., O'Brien v. Dubois*, 145 F.3d 16 (1st Cir.1998); *Matteo v. Albion*, 171 F.3d 877 (3d Cir.1999). The Supreme Court has recently granted *certiorari* to resolve the issue. *See Williams v. Taylor*, 163 F.3d 860 (4th Cir.1998), *cert. granted*, —— U.S. ——, 119 S.Ct. 1355, 143 L.Ed.2d 516 (1999).

reaching a verdict. Coercion may be found when jurors are encouraged to abandon, without any principled reason, doubts that any juror conscientiously holds as to a defendant's guilt." *United States v.. Melendez*, 60 F.3d 41, 51 (2d Cir.1995); *see also United States v. Robinson*, 560 F.2d 507, 517 (2d Cir.1977) (in banc) ("The propriety of an Allen-type charge depends on whether it tends to coerce undecided jurors into reaching a verdict by abandoning without reason conscientiously held doubts.").

■ Accordingly, a necessary component of any *Allen*-type charge requires the trial judge to admonish the jurors not to surrender their own conscientiously held beliefs. *See United States v. Strothers*, 77 F.3d 1389, 1391 (D.C.Cir.1996) (reversal due to trial judge's failure to give the required admonition not to surrender honest convictions); *United States v. Mason*, 658 F.2d 1263, 1268 (9th Cir.1981) (reversing conviction due to lack of cautionary language and observing that "[i]f cases grappling with Allen have a common thread, it is this: the integrity of individual conscience in the jury deliberation process must not be compromised"). Thus, we have validated the use of an *Allen*-type charge when the charge is given by the court in "an evenhanded, noncoercive manner that it would prefer a unanimous verdict if accomplished 'without any juror yielding a conscientious conviction which he or she may have.' " *United States v. Burke*, 700 F.2d 70, 80 (2d Cir.1983) (quoting *United States v. Rao*, 394 F.2d 354, 355 (2d Cir.1968)).

The state contends that the trial court's supplemental instructions did not coerce the minority, arguing that the supplementary instruction was neither inherently coercive nor coercive in the context of the petitioner's trial. In making this claim, the state argues that the instructions given did not resemble a traditional *Allen* charge because the trial judge never urged the jury to reach a verdict, but rather ordered them only to continue to deliberate, argue and discuss. Regardless of the terminology used to describe the charge that was given, the state's arguments fail to address, let alone overcome, the fatal flaw of the jury charge in this case; the lack of any cautionary language which would discourage jurors from surrendering their own conscientiously held beliefs.

The most recent Supreme Court case emphasizing the importance of a balanced charge is *Lowenfield*, 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568. There, a state prisoner who had been sentenced to death following conviction of first degree murder petitioned for a writ of habeas corpus, assailing the constitutionality of the *Allen* charge that had been given at his trial. *Id.* at 236, 108 S.Ct. 546. The charge, in pertinent part, instructed:

> When you enter the jury room it is your duty to consult with one another to consider each other's views and to discuss the evidence with the objective of reaching a just verdict if you can do so without violence to that individual judgment.
>
> Each of you must decide the case for yourself but only after discussion and impartial consideration of the case with your fellow jurors. You are not advocates for one side or the other. Do not hesitate to reexamine your own views and to change your opinion if you are convinced you are wrong but do not surrender your honest belief as to the weight and effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict.

*Id.* at 235, 108 S.Ct. 546.

Although noting that "[a]ny criminal defendant ... being tried by a jury is entitled to the uncoerced verdict of that body," *id.* at 241, 108 S.Ct. 546, the Supreme Court upheld the constitutionality of the charge in question, concluding that the instruction "was not 'coercive' in such a way as to deny petitioner any constitutional right." *Id.* at 241, 108 S.Ct. 546.

In sharp contrast to the charge upheld in *Lowenfield,* the charge given at Smalls' trial failed to include instructions reminding jurors not to abandon their conscientiously held views, even if holding firm would leave a minority of the jurors unconvinced. It is this lack of cautionary language, especially when coupled with the trial court's thrice repeated direction that the jurors convince each other, that renders the charge coercive and a violation of Smalls' constitutional rights to due process and a fair trial.

Smalls contended below that the trial judge's repeated instructions to "convince" other jurors distorted the jury deliberations because it deviated from fundamental principles that govern jury deliberations by unconstitutionally shifting the burden of proof from the state to the petitioner. The district court did not respond directly to that argument but concluded that the charge given was inherently coercive in that it changed the role of jurors from listeners to advocates, by creating a "novel burden on the jurors: the duty to convince fellow jurors." *Smalls,* 6 F.Supp.2d at 220. This "novel burden" stemmed from instructions that each juror had a "responsibility" to "convince" the others as to the correctness of his or her position. The district court concluded that "a juror has no responsibility to convince other jurors that his or her position is correct or should be adopted. Rather, a juror's duty is to impartially consider the evidence and try to reach an agreement without surrendering his or her individual views." *Id.* The district court relied on the sanctioned instruction given in *Lowenfield* which informed jurors that "[y]ou are not advocates for one side or the other." *Lowenfield,* 484 U.S. at 235, 108 S.Ct. 546.

■ We agree that jurors have no burden or obligation to convince one another that one outcome is preferable to another, but we hesitate to rule that a constitutional violation will result whenever a trial judge exhorts jurors to try to convince one another. A given jury instruction cannot be viewed in isolation and its impact must be evaluated in light of the entire charge. Here, the charge included language encouraging jurors to "discuss [the case] amongst yourselves" and to "express your opinions and views" as well as "to continue a free discussion." As the Supreme Court in *Allen* instructed, "[t]he very object of the jury system is to secure unanimity by a comparison of views, and by arguments among the jurors themselves." *Allen,* 164 U.S. at 501, 17 S.Ct. 154. Instructions by a trial judge which encourage jurors to argue, convince, discuss and persuade should not be deemed automatically to violate the Constitution. Under proper circumstances and in the context of a given charge, mere use of the word "convince" might not impermissibly shift the burden of proof, nor render the charge inherently coercive. The purpose of deliberations, after all, is to reach a unanimous verdict.

To be sure, the trial judge in this case needlessly imposed a burden on the jurors to convince one another. But the charge was rendered coercive not so much for what it contained but for what it failed to contain. The absence of cautionary language may well have left the minority juror with the belief that he or she had no other choice but to convince or surrender. We need not decide whether the charge given would have been coercive if it had included the requisite cautionary language. As given, the instant charge was improper and coercive because it failed to include that cautionary language, not just because it created a "novel burden" by exhorting the jurors to convince one another.

■ The necessity for such cautionary language is highlighted in this case because, as the trial judge was well aware, the jury was divided eleven to one when the supplemental instructions were given. Although the state argues that the charge was proper because the judge never singled out either the minority or the majority, it is from the position of a minority juror that a suspect *Allen* charge is analyzed. *See United States v. Burgos,* 55

F.3d 933, 940 (4th Cir.1995) ("[Minority jurors] always know their minority status, and if fearfully inclined, may presumably suspect a disgruntled judge can find them out.") (citation and internal quotation marks omitted). Here, the juror in the minority was not made aware of the possibility that, if he or she was not convinced by the views of the majority, he or she should hold on to his or her own conscientiously held beliefs. The absence of that option might lead minority jurors to believe that unless they are able to convince the majority, they should abandon their own conscientiously held position.

■ The state also contends that the length of time the jury deliberated after the charge was given serves as an indicator that the charge was not coercive. In *Burke*, we did state that "the length of time between the court's instruction and the actual rendering of the jury verdict is probative of the fact that the jury was not coerced or unduly influenced by the judge's remarks." 700 F.2d at 80. In *Burke*, however, the court reached its ultimate conclusion—that the trial judge's instructions were evenhanded—because the charge encouraged jurors to reach a verdict without surrendering their conscientiously held beliefs. *Id.* In contrast, the jury charge in Smalls' case lacked any such cautionary language and failed to inform the jurors of the possibility that they could remain deadlocked rather than surrender their conscientiously held beliefs. The length of deliberations in this case did not diminish the coerciveness of the supplemental jury charge.

*Lowenfield* does not support the state's length of deliberations argument either. *Lowenfield* involved a charge that was balanced by cautionary language. The *Lowenfield* charge encouraged jurors to reach a verdict and cautioned, "do not surrender your honest belief as to the weight and effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict." *Lowenfield*, 484 U.S. at 235, 108 S.Ct. 546.

In *Lowenfield* the Supreme Court found the charge to be proper because it contained language encouraging jurors to decide the case for themselves while also considering the views of others. Because the *Lowenfield* charge itself was not coercive, the thirty minutes of deliberation there before reaching a verdict provides little support for the state's length of deliberations argument in this case. The jurors in the present case were never told by the trial judge that they could remain steadfast in their conscientiously held beliefs.

### D. *The Error Requires Reversal*

"Habeas corpus challenges to state court convictions are among the most frequently litigated matters in the federal district courts and courts of appeals, and assessment of harmlessness is probably the single most recurring issue presented in such cases." *Peck v. United States*, 102 F.3d 1319, 1327 (2d Cir.1996) (in banc) (per curiam) (Newman, *J.*, concurring). That issue must be faced here as well.

■ In *Arizona v. Fulminante*, 499 U.S. 279, 307–09, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991), the Supreme Court articulated two categories of constitutional error, "trial error" and "structural defects." As the Supreme Court summarized in *Brecht v. Abrahamson*, 507 U.S. 619, 113 S.Ct. 1710, 123 L.Ed.2d 353 (1993), "trial error" is one that " 'occur[s] during the presentation of the case to the jury,' " and can be assessed " 'in the context of other evidence presented in order to determine [the effect that it had on the trial].' " *Id.* at 629, 113 S.Ct. 1710 (quoting *Fulminante*, 499 U.S. at 307–08, 111 S.Ct. 1246 (alteration in original)). In federal habeas proceedings, trial error is analyzed using the harmless error standard set forth in *Kotteakos v. United States*, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946). That analysis seeks to determine " 'whether the error "had substantial and injurious effect or influence in determining the jury's verdict." ' " *Cali-*

*fornia v. Roy,* 519 U.S. 2, 4, 117 S.Ct. 337, 136 L.Ed.2d 266 (1996) (quoting *Brecht,* 507 U.S. at 637, 113 S.Ct. 1710 (quoting *Kotteakos,* 328 U.S. at 776, 66 S.Ct. 1239)).

■ "Structural defects," by contrast, encompass "defects in the constitution of the trial mechanism, which defy analysis by 'harmless-error' standards." *Fulminante,* 499 U.S. at 309, 111 S.Ct. 1246. A common example of a structural defect is deprivation of the right to counsel. *See id.* (citing *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963)). Harmless error inquiry cannot salvage a conviction in the presence of structural errors; automatic reversal is necessary "because they infect the entire trial process." *Brecht,* 507 U.S. at 629–30, 113 S.Ct. 1710.

For the purposes of harmless error analysis the Supreme Court has explained that "[w]hen a federal judge in a habeas proceeding is in grave doubt about whether a trial error of federal law had 'substantial and injurious effect or influence in determining the jury's verdict,' that error is not harmless. And, the petitioner must win." *O'Neal v. McAninch,* 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995). The Court explained that "grave doubt" means that in the mind of the judge "the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error." *Id.* at 435, 115 S.Ct. 992. According to the Court, this "grave doubt" rule "both protects individuals from unconstitutional convictions and helps to guarantee the integrity of the criminal process by assuring that trials are fundamentally fair." *Id.* at 442, 115 S.Ct. 992.

■ It is within this framework that we analyze the jury charge in this case. Smalls contends that harmless error analysis does not apply because the erroneous charge impermissibly shifted the burden of proof and, as such, is similar to such "structural error" violations as improper reasonable doubt instructions and deprivation of the right to counsel. Indeed, the district court stated that "it would appear that a coercive *Allen* charge is akin to improper reasonable doubt instructions, a partial judge, or deprivation of the right to counsel, and therefore a 'structural error' to which harmless error analysis is inapplicable." *Smalls,* 6 F.Supp.2d at 222–23.

Nevertheless, ruling in the alternative, the district court reasoned that even if the error was "trial error," and harmless error analysis applied, the writ should issue. The court explained that because "grave doubt exists concerning whether the *Allen* charge indeed had 'substantial and injurious effect or influence' in determining the jury's verdict, the error is not harmless." *Smalls,* 6 F.Supp.2d at 223.

After viewing the charge in light of the entire record, we need not decide which category of constitutional error was committed here. Even if the supplemental jury charge constituted trial error, the writ must issue because we agree with the district court that "grave doubt" exists as to whether the coercive *Allen* charge had a " 'substantial and injurious effect or influence' in determining the jury's verdict." *Id.*

In particular, three times during the course of deliberations the trial judge reminded the jurors that they had a duty and responsibility to convince other jurors that their views were correct. Moreover, the trial judge failed to balance this charge with language that would remind the minority not to surrender their conscientiously held beliefs merely for the purpose of obtaining a unanimous verdict. Under these circumstances, it is impossible to say with any certainty that the erroneous charge did not have a "substantial and injurious effect or influence" on the jury's verdict. In such a situation, the "petitioner must win." *O'Neal,* 513 U.S. at 436, 115 S.Ct. 992.

## CONCLUSION

We therefore affirm the district court's decision that the coercive nature of the

charge in this case requires the issuance of a writ. We emphasize that the charge was coercive as much for what it omitted as for what it included. This is so particularly because the charge lacked cautionary instructions reminding the jurors that they were not to surrender their conscientiously held beliefs. While a proper charge can encourage dialogue and debate and inform jurors that they may attempt to convince others that a particular view is correct, such a charge must caution the jurors never to abandon their conscientiously held beliefs, even if holding firm will result in a deadlock. The charge here was not harmless error.

The judgment of the district court is affirmed.