**Cory SPEARS, Petitioner–Appellant,**

v.

**Charles GREINER, Respondent–Appellee.**

**Docket No. 05–2297–pr.**

United States Court of Appeals, Second Circuit.

Argued: June 23, 2006.

Decided: Aug. 2, 2006.

Tina Schneider, Portland, Maine, for Petitioner–Appellant.

Victor Barall, Assistant District Attorney, Kings County, New York (Charles J. Hynes, District Attorney, and Leonard Joblove and Joseph Huttler, Assistant District Attorneys, on the brief) for Respondent–Appellee.

Before JACOBS, POOLER, Circuit Judges; KOELTL, District Judge.[1]

· KOELTL, District Judge.

This case asks us to clarify when a charge requesting a deadlocked jury in a criminal case to continue deliberating requires specific cautionary language instructing jurors not to abandon their conscientiously held beliefs.

The petitioner appeals from the judgment of the United States District Court for the Eastern District of New York (Weinstein, J.), entered March 16, 2005, denying his petition for a writ of habeas corpus. The petitioner challenges his conviction after a jury trial in the New York

1. The Honorable John G. Koeltl of the United States District Court for the Southern District of New York, sitting by designation.

State Supreme Court, Kings County, on the grounds that the petitioner's Fifth and Sixth Amendment rights were violated by the trial court's modified *Allen* charge to the deadlocked jury.

We affirm.

## BACKGROUND

The petitioner-appellant, Corey Spears, was convicted of robbery in the first degree following a jury trial in the New York State Supreme Court, Kings County. Spears was charged with participating in an armed robbery along with his co-defendant, Lamar Suber. During the first day of deliberations, the jury sent out two notes requesting review of certain evidence and clarification of the jury instructions. Later on the first day, the jury sent out three additional notes. The trial judge responded to the first two notes by giving additional instructions and having additional testimony read to the jury. The trial judge then read the final note aloud, which stated: "We have a hung jury on both defendants and don't think anything will help change our decision." The trial judge responded to that note as follows:

The answer to that one is that you have just barely begun your deliberations. We spent a good deal of time in selecting the jury and hearing the testimony. Please give it your full attention. I have a very strong feeling that you should be able to reach a verdict.

After an unrecorded side-bar conference, the trial judge continued:

Members of the jury, there has been an objection by counsel to my statement that a lot of time and money has been expended on this case. That shouldn't be part of your consideration. What you should consider is what the facts are with the idea, with an attempt to reach a verdict if that be possible. Based on the very few hours that you have deliberat-

ed, I tell you that it's far too premature at this point to send such a note. Please continue your deliberations with a view toward arriving at a verdict if that's possible.

Counsel for the defense had no further objection to this instruction. The jury then returned another note concerning the evidence, and after "some time" had elapsed, the judge sent the jury to dinner and to a hotel. The following morning, it became apparent that one of the jurors would have to leave the deliberations with a court officer to check on a medical emergency in her family, and might not be able to return to the deliberations. The judge then called in the jury at 11:00 a.m. to ask if they had reached a verdict as to any defendant on any count. The jury indicated that it had reached a verdict as to Spears, finding him guilty of robbery in the first degree, but had not reached a verdict as to his co-defendant, Suber. The trial court accepted the partial verdict, and subsequently declared a mistrial as to Suber.

Spears then unsuccessfully appealed to the New York State Supreme Court, Appellate Division, arguing that the trial court had improperly inquired into whether the jury had reached a verdict, and then improperly accepted a partial verdict. In the midst of this argument in his brief, Spears argued that the "prompting of the jury to return a verdict" was made "even more problematic by the court's earlier charge when the jury sent out [a] note saying it was deadlocked as to both defendants." By memorandum decision and order dated October 23, 2000, the Appellate Division unanimously affirmed Spears's conviction, rejecting the claim that the trial court erred in accepting a partial verdict. *People v. Spears,* 276 A.D.2d 725, 715 N.Y.S.2d 640 (2000). The Appellate Division did not refer to the argument

regarding the supplemental charge. The petitioner's application for permission to appeal to the New York Court of Appeals was denied. *People v. Spears,* 745 N.E.2d 1029 (N.Y.2001).

Following the exhaustion of his direct appeal in the New York State courts, Spears filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 in the United States District Court for the Eastern District of New York.[2] Among other claims, Spears argued that the trial court's instructions to the jury after it had indicated that they were deadlocked constituted an impermissible *Allen* charge. *See Allen v. United States,* 164 U.S. 492, 17 S.Ct. 154, 41 L.Ed. 528 (1896). The district court (Weinstein, J.) denied the petition, but granted a certificate of appealability on Spears's *Allen* 20 charge claim. *Spears v. Spitzer,* 2005 WL 588238, at *21 (E.D.N.Y. Mar. 14, 2005). This appeal followed.

## DISCUSSION

### I. Standard of Review

■ We review a district court's denial of a petition for a writ of habeas corpus de *novo. See Shabazz v. Artuz,* 336 F.3d 154, 160 (2d Cir.2003). Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), codified at 28 U.S.C. § 2254, the standard governing federal habeas review depends upon whether the petitioner's claims have previously been "adjudicated on the merits" by a state court. 28 U.S.C. § 2254(d). This Court has held that a state court "adjudicates" a

petitioner's federal constitutional claims "on the merits" when it "states that it is disposing of the claims on the merits and reduces its disposition to judgment." *Shabazz,* 336 F.3d at 160; *see also Jimenez v. Walker,* 458 F.3d 130, 140, 2006 WL 2129338, at *8 (2d Cir. July 31, 2006); *Kennaugh v. Miller,* 289 F.3d 36, 42 (2d Cir.2002). To determine whether a state court disposition is "on the merits," this Court examines (1) the state court's opinion, (2) whether the state court was aware of a procedural bar, and (3) the practice of state courts in similar circumstances. *See Jimenez,* 458 F.3d at 140, 2006 WL 2129338, at *8.

■ If the claim was "adjudicated on the merits" in state court, a federal habeas court may grant the writ only if adjudication of the claim

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). If a federal claim has not been adjudicated on the merits, AEDPA deference is not required, and conclusions of law and mixed findings of fact and conclusions of law are reviewed de *novo. DeBerry v. Portuondo,* 403 F.3d 57, 66–67 (2d Cir.2005).

In this case, the Appellate Division's opinion makes no mention of the *Allen* charge claim at issue here. *Spears,* 715

---

**2.** While his federal petition for habeas corpus was pending, Spears also moved unsuccessfully in the New York State Supreme Court to vacate his conviction on the grounds of ineffective assistance of counsel, and leave to appeal to the Appellate Division was denied. Spears then petitioned the Appellate Division for a writ of error *coram nobis* based on the alleged ineffective assistance of appellate counsel. The Appellate Division denied the petition. *People v. Spears,* 8 A.D.3d 506, 778 N.Y.S.2d 284 (2004). Leave to appeal to the New York Court of Appeals was denied. *People v. Spears,* 3 N.Y.3d 761, 788 N.Y.S.2d 677, 821 N.E.2d 982 (2004).

N.Y.S.2d at 640. Although the petitioner raised an issue with respect to the trial judge's supplemental charge in conjunction with his argument before the Appellate Division regarding the partial verdict, there is no showing that the Appellate Division adjudicated this issue on its merits. The argument on the supplemental charge was contained in a single paragraph that was part of a more extensive argument on taking the partial verdict. The Appellate Division, after disposing of the partial verdict argument, gave no indication that it had considered or disposed of any other argument.

It is unnecessary in this case to decide whether to afford AEDPA deference to the decision of the Appellate Division because, even applying a *de novo* review standard, we find that the petitioner has failed to establish any violation of federal law. *Cf. Wiggins v. Smith,* 539 U.S. 510, 530–31, 535–36, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003) (applying *de novo* standard to part of a federal claim not reached

by the state court); *Boyette v. Lefevre,* 246 F.3d 76, 91 (2d Cir.2001)(same).

## II. Appropriateness of the Modified *Allen* Charge

The parties and the district court characterize the trial judge's instructions to the deadlocked jury as a modified *Allen* charge. While we accept the parties' and the district court's characterization of the instructions as a modified *Allen* charge, other courts have held that a "judge's simple request that the jury continue deliberating, especially when unaware of the composition of the jury's nascent verdict" can not be "properly considered an *Allen* charge."[3] *United States v. Prosperi,* 201 F.3d 1335, 1341 (11th Cir.2000). In *Allen,* the Supreme Court approved of supplemental instructions given to a deadlocked jury urging them to continue deliberating and for the jurors in the minority to listen to the majority's arguments and ask themselves whether their own views were reasonable under the circumstances.[4] 164

---

3. Courts have found that a key aspect of an *Allen* charge is that it asks jurors to reexamine their own views and the views of others, which introduces the danger that jurors will abandon their conscientiously held beliefs, and thus warrants additional cautionary language. *See United States v. LaVallee,* 439 F.3d 670, 689 (10th Cir.2006) (finding the supplemental instruction not to be a typical *Allen* charge, which the court generally defined as "an instruction [that] urges deadlocked jurors to review and reconsider the evidence in the light of the views expressed by other jurors") (internal citation and quotation marks omitted); *Montoya v. Scott,* 65 F.3d 405, 409–10 (5th Cir.1995) (supplemental instruction was not a traditional *Allen* charge because it did not have "the most troublesome feature of the *Allen* charge-the exhortation to the minority to reexamine its views in light of the majority's arguments") (internal quotation marks omitted). Regardless of how the charge in this case is characterized, we still analyze it for any coercive effects on a deadlocked jury in its context and under all

the circumstances. *See Montoya,* 65 F.3d at 410.

4. A key aspect of the original *Allen* charge is the suggestion that jurors in the minority should reconsider their position. 164 U.S. at 501, 17 S.Ct. 154 ("[I]f much the larger number were for conviction, a dissenting juror should consider whether his doubt was a reasonable one which made no impression upon the minds of so many men, equally honest, equally intelligent with himself. If, [on] the other hand, the majority were for acquittal, the minority ought to ask themselves whether they might not reasonably doubt the correctness of a judgment which was not concurred in by the majority."). Due to the potential coercive effects on jurors in the minority, the *Allen* charge has been called the "dynamite charge" because "[l]ike dynamite, it should be used with great caution, and only when absolutely necessary." *United States v. Flannery,* 451 F.2d 880, 883 (1st Cir.1971). In more recent times, courts have tended to use "modified" *Allen* charges that do not contrast the

U.S. at 501, 17 S.Ct. 154. The instructions in *Allen* included statements directing that "the verdict must be the verdict of each individual juror, and not a mere acquiescence in the conclusion of his fellows," and that it was the jury's duty "to decide the case if they could conscientiously do so." *Id.* These statements served to remind jurors in the minority that a verdict was not required, and that no juror should surrender the juror's conscientiously held views for the sake of rendering a verdict.

■ In *Lowenfield v. Phelps,* 484 U.S. 231, 108 S.Ct. 546, 98 L.Ed.2d 568 (1988), the Supreme Court considered the appropriateness of a supplemental charge to a deadlocked jury, which "in contrast to the so-called 'traditional *Allen* charge,' does not speak specifically to the minority jurors." *Id.* at 238, 108 S.Ct. 546. The Supreme Court held that the potential coercive effect of a charge to a deadlocked jury must be evaluated " 'in its context and under all the circumstances.' " *Id.* at 237, 108 S.Ct. 546. (quoting *Jenkins v. United States,* 380 U.S. 445, 446, 85 S.Ct. 1059, 13 L.Ed.2d 957 (1965) (per curiam)). Applying this standard of review, the Supreme Court approved of the modified *Allen*

charge given in that case, even though the jury returned a sentencing verdict soon after receiving the charge.[5] *Id.* at 240, 108 S.Ct. 546. One factor the Court considered was that defense counsel did not object to the supplemental instruction, which the Court found indicated "that the potential for coercion argued now was not apparent to one on the spot." *Id.*

■ This Court has applied the *Lowenfield* standard to find that when an *Allen* charge directs jurors to consider the views of other jurors, specific cautionary language reminding jurors not to abandon their own conscientious beliefs is generally required. *See United States v. Henry,* 325 F.3d 93, 107 (2d Cir.2003) (approving *Allen* charge which instructed jurors in the minority and the majority to consider the views of the others, and noting "this Court has approved language directing jurors to consider the views of other jurors without abandoning their own conscientious opinions"); *Smalls v. Batista,* 191 F.3d 272, 280 (2d Cir.1999) ("In sharp contrast to the charge upheld in *Lowenfield,* the charge given at Smalls' trial failed to include instructions reminding jurors not to abandon their conscientiously held views, even if

majority and minority positions. See Leonard B. Sand, et al., 1 *Modern Federal Jury Instructions: Criminal,* Instruction 9–11 (2004) (comparing modified *Allen* charges used in different Circuits; see *also* Wayne F. Foster, *Instructions Urging Dissenting Jurors in State Criminal Case to Give Due Consideration to Opinion of Majority (Allen Charge)— Modern Cases,* 97 A.L.R. 96, § 2 (3d ed.1980, updated 2006).

5. The jurors in *Lowenfield* had already reached a decision in a capital case, but were deadlocked in sentencing deliberations. The supplemental charge to the deadlock jury stated:

Ladies and Gentlemen, as I instructed you earlier if the jury is unable to unanimously agree on a recommendation the Court shall impose the sentence of Life Imprisonment

without benefit of Probation, Parole, or Suspension of Sentence.

When you enter the jury room it is your duty to consult with one another to consider each other's views and to discuss the evidence with the objective of reaching a just verdict if you can do so without violence to that individual judgment.

Each of you must decide the case for yourself but only after discussion and impartial consideration of the case with your fellow jurors. You are not advocates for one side or the other. Do not hesitate to reexamine your own views and to change your opinion if you are convinced you are wrong but do not surrender your honest belief as to the weight and effect of evidence solely because of the opinion of your fellow jurors or for the mere purpose of returning a verdict. 484 U.S. at 235, 108 S.Ct. 546.

holding firm would leave a minority of the jurors unconvinced. It is this lack of cautionary language, especially when coupled with the trial court's thrice repeated direction that the jurors convince each other, that renders the charge coercive and a violation of Smalls' constitutional rights to due process and a fair trial.").

■ Spears argues that the supplemental charge at issue here was coercive because it failed to include the specific cautionary language that jurors must not surrender their own conscientiously held beliefs. Spears argues that *Smalls* created a bright-line rule that "a necessary component of any *Allen*-type charge requires the trial judge to admonish the jurors not to surrender their own conscientiously held beliefs." *Smalls*, 191 F.3d at 279.

This Court did not create any new rule in *Smalls* that would replace the Supreme Court's standard in *Lowenfield* that an *Allen* charge must be evaluated "in its context and under all the circumstances." *Lowenfield*, 484 U.S. at 237, 108 S.Ct. 546. The charge in *Smalls* was found to be coercive under the context and circumstances of that case, and this Court wrote in *Smalls* "to emphasize that the charge in question was unconstitutionally coercive because it *both* (1) obligated jurors to convince one another that one view was superior to another, and (2) failed to remind those jurors not to relinquish their own conscientiously held beliefs." 191 F.3d at 278 (emphasis in original).[6]

With these principles in mind, we review the modified *Allen* charge before us. The charge asked the jurors to consider the facts "with an *attempt* to reach a verdict if *that be possible*," and to continue deliberations "with a view toward arriving at a verdict *if that's possible*." *Spears*, 2005 WL 588238, at *20 (emphasis in original). The district court correctly concluded that "[i]n the context of all the facts and circumstances, this corrective language of the court reasonably could have been deemed noncoercive by every juror and therefore nonprejudicial." Id. While the supplemental charge did not include the specific cautionary language cited in *Smalls*, the charge did not urge the jurors to listen to the views of other jurors with whom they disagreed or attempt to persuade each other. Moreover, the original charge, given to the jury earlier that day, did include cautionary language telling jurors that they had a right to stick to their arguments and stand up for their own strong opinions. *Id.*

The fact that defense counsel failed to object to the trial court's revised supplemental charge is also a persuasive factor, much as it was in *Lowenfield*, in finding that the charge was not improperly coercive. The district court held an evidentiary hearing where Spears's state trial counsel gave credible testimony that he did not believe the supplemental charge was an impermissible *Allen* charge. *Id.* at 17.

Finally, the actions of the jury after receiving the modified *Allen* charge do not

---

**6.** The appellee relies on this Court's decision in *Campos v. Portuondo*, 320 F.3d 185 (2d Cir.2003) (per curiam), for the proposition that the Court has approved a non-coercive *Allen* charge even without the cautionary language about jurors not abandoning their conscientiously held beliefs. However, the charge at issue did in fact contain language reminding jurors that they had the absolute right to stand by their views and that a verdict should be "consistent with the conscience of the jury." *Campos v. Portuondo*, 193 F.Supp.2d 735, 739–41 (S.D.N.Y.2002). *Campos* held, affording AEDPA deference to the state court decision, that the Appellate Division's decision that the supplemental charges were not coercive under all the circumstances was not an unreasonable application of *Lowenfield. Id.* at 749.

support a finding of coercion. The jury continued deliberating for the rest of the day, resuming the following morning, and was unable to reach a verdict with respect to Spears's co-defendant. This result "strongly indicates that individual attention was given to each defendant as to each count," and that the charge "did not cause jurors to surrender their opinions merely to reach a result." *United States v. Fermin,* 32 F.3d 674, 680 (2d Cir. 1994)(mixed verdicts are a strong indication of lack of coercion), *overruled* on *other grounds, Bailey v. United States,* 516 U.S. 137, 116 S.Ct. 501, 133 L.Ed.2d 472 (1995).

Thus, reviewing the modified *Allen* charge in its context and under all the circumstances, there is no showing that it was impermissibly coercive.

## CONCLUSION

We have carefully considered all of the appellant's arguments on appeal. For the reasons discussed above, the judgment of the district court is **affirmed.**