10-2955 (L)
U.S. v. Hemmings, Phillips

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 24th day of May, two thousand twelve.

PRESENT: JON O. NEWMAN,
            CHESTER J. STRAUB,
            GERARD E. LYNCH,
                    *Circuit Judges.*

_____

UNITED STATES OF AMERICA,
                *Appellee*,

        v.                            No. 10-2955-cr (Lead)
                                        No. 10-4951-cr (CON)

ODINI HEMMINGS and KEVIN PHILLIPS,
                *Defendants-Appellants*,

_____

FOR APPELLANT
ODINI HEMMINGS:      JACK G. GOLDBERG, New York, New York.

FOR APPELLANT
KEVIN PHILLIPS:       BEVERLY VAN NESS, New York, New York.

FOR APPELLEE:         SYLVIA S. SHWEDER, Assistant United States Attorney (Susan Corkery, Stephen Meyer, *on the brief*), *for* Loretta E. Lynch, United States Attorney for the Eastern District of New York, Brooklyn, New York.

Appeal from the United States District Court for the Eastern District of New York (Nina Gershon, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgments of the district court are AFFIRMED.

Defendant-appellant Odini Hemmings appeals his conviction for conspiring to distribute crack cocaine in violation of 21 U.S.C. § 846 and distributing and possessing with intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1). Defendant-appellant Kevin Phillips appeals his conviction, after a separate trial, of one count of distributing and possessing with intent to distribute five grams or more of crack cocaine in violation of 21 U.S.C. § 841(a)(1). We assume the parties' familiarity with the underlying facts and procedural history of the case.

Hemmings contends that the district court erred by: (1) admitting portions of partially inaudible recordings; (2) admitting certain audio recordings and crack handled by a witness not called at trial; (3) denying his motions for a judgment of acquittal and for a new trial; (4) denying his application for a mistrial during jury deliberations and giving a modified jury charge pursuant to Allen v. United States, 164 U.S. 492 (1896); and (5) admitting his own post-indictment statements to a government witness. Phillips contends that (1) there was insufficient evidence to support his conviction and (2) the district court committed reversible error by permitting a witness to identify Phillips from an arguably suggestive surveillance photograph after the witness was unable to identify him in court. These arguments are without merit. For the reasons stated below, we affirm the judgments of conviction in both cases.

2

I. Hemmings

(1) Hemmings first argues that the district court erred by admitting into evidence partially inaudible audio recordings. The "question of degree of audibility is a matter of the trial judge's sound discretion," which we review for abuse. United States v. Kaufer, 387 F.2d 17, 19 (2d Cir. 1967); see also United States v. Arango-Correa, 851 F.2d 54, 58 (2d Cir. 1988).

We cannot conclude that the district court abused its discretion by adopting the magistrate judge's recommendation as to the audibility of the recordings. Hemmings is correct that large portions of the recordings offered by the government were inaudible. But the magistrate judge agreed with him and narrowed the number of recorded conversations admitted from the seven that the government initially proposed to the two ultimately admitted into evidence. Although the remaining two conversations contained inaudible portions, "[t]he mere fact that some portions of a tape recording are inaudible does not by itself require exclusion of the tape." Arrango-Correa, 851 F.2d at 58. The question is not whether there are "ambigu[ous]" or "inaudib[le]" portions in the recordings, but whether the audible portions of the recordings retain probative value. Id.

The magistrate judge, whose recommendations the district court accepted in their entirety, carefully reviewed the recordings and transcripts for audibility, as we have required. See United States v. Bryant, 480 F.2d 785, 789 (2d Cir. 1973). The district court's adoption of the magistrate judge's conclusions was therefore not an abuse of its discretion.

3

(2) Hemmings next argues that the district court erred by admitting both audio recordings made and crack handled by the government's cooperating informant, whom the government did not call as a witness. Hemmings argues that the failure to have the cooperating informant authenticate the recordings and physical evidence violated his due process, fair trial, and confrontation rights under the Fifth and Sixth Amendments. We review the district court's authentication decisions for abuse of discretion. See Healey v. Chelsea Resources, Ltd., 947 F.2d 611, 620 (2d Cir. 1998).

In-court testimony by a particular witness is not a prerequisite to authenticate non-testimonial evidence. With respect to the audio recording, while we have required that the government prove by "clear and convincing evidence" that sound recordings are what they purport to be, see United States v. Ruggiero, 928 F.2d 1289, 1303 (2d Cir. 1991), Hemmings cites no case that requires the authentication of a recording by a participant in the conversation. Certainly, the government may authenticate recorded conversations by evidence of an unbroken chain of custody. See United States v. Fuentes, 563 F.2d 527, 532 (2d Cir. 1977). But as we held in United States v. Tropeano, "our upholding the authentication of tapes by establishing a chain of custody in the absence of testimony by a contemporaneous witness to the recorded conversations does not imply," as appellant suggests, "that such a witness cannot provide equally sufficient authentication without proof of a chain of custody." 252 F.3d 653, 661 (2d Cir. 2001). "The requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent

4

claims." Fed. R. Evid. 901(a) (2009). So long as there is sufficient proof such that a "reasonable juror could find in favor of authenticity," the district court's authentication decisions can stand. United States v. Sliker, 751 F.2d 477, 488 (2d Cir. 1984). Here, the tapes were authenticated by a government agent who recognized the voices on the tapes. The district court did not abuse its discretion by following these approved procedures. Tropeano, 252 F.3d at 661.

The allegedly broken chain of custody for the crack is also no basis for reversal. A break of the chain of custody, even if it did occur, "do[es] not bear upon the admissibility of evidence, only the weight of the evidence." United States v. Morrison, 153 F.3d 34, 57 (2d Cir. 1998). The jury heard evidence that the government's cooperating informant received crack during two transactions, and then turned that crack over to the government agents. With respect to one transaction, where the informant was the only witness against the defendant, the jury deadlocked. With respect to another transaction, where there was additional evidence regarding the defendant's participation, the jury convicted. In both instances, the jury had sufficient evidence to weigh the chain of custody. That it failed to convict on one count does not mean that the evidence was inadmissible, only that the jury found the evidence against Hemmings insufficient on that count. That result does not render the district court's decision regarding the admissibility of the evidence an abuse of discretion.

(3) Hemmings also argues that the district court committed reversible error by denying his Rule 29 motion for a judgment of acquittal and Rule 33 motion for a new

5

trial. "[W]e review de novo the denial of a Rule 29 sufficiency challenge . . . [and] view th[e] evidence in the light most favorable to the government, assuming that the jury resolved all questions of witness credibility and competing inferences in favor of the prosecution." United States v. Abu–Jihaad, 630 F.3d 102, 134 (2d Cir. 2010) (citations omitted). "We review challenges to a district court's denial of a Rule 33 motion for an abuse of discretion and accept the district court's factual findings unless they are clearly erroneous." United States v. McCourty, 562 F.3d 458, 475 (2d Cir. 2009) (internal quotation marks omitted). "[Rule 33] motions are granted only in 'extraordinary circumstances,' and are committed to the trial court's discretion." Id. (citation omitted).

Viewing the evidence in the light most favorable to the prosecution, we cannot conclude that the district court erred by denying Hemmings's motion for a judgment of acquittal. The jury heard more than sufficient evidence to support a conviction, including, in the district court's words, "consensual recordings between co-conspirator[s]"; "surveillance photos of the two [conspirators]"; "the actual drugs . . . recovered by the agent after the deal"; and more. Similarly, the "extraordinary circumstances" required for a district court to grant a defendant's Rule 33 motion for a new trial are not present in this case. We agree with the district court that the case does not present "a miscarriage of justice in the two convictions," nor is there "a concern that an innocent person may have been convicted." See also United States v. Sanchez, 969 F.2d 1409, 1413 (2d Cir. 1992).

6

(4) Hemmings next argues that (a) the district court's failure to declare a mistrial after the jurors expressed frustration and hostility toward each other before returning their partial verdict was erroneous and (b) the district court's subsequent modified <u>Allen</u> charge to the jury coerced the jury in violation of Hemmings's right to an impartial jury. We review a district court's decision not to declare a mistrial for an abuse of discretion, and afford the district court's decision "the highest degree of respect." <u>United States v. Millan</u>, 17 F.3d 14, 20 (2d Cir. 1994). We also review a court's <u>Allen</u> charge for abuse of discretion, and reverse if the charge tends to "coerce undecided jurors into reaching a verdict by abandoning without reason conscientiously held doubts." <u>United States v. Henry</u>, 325 F.3d 93, 106 (2d Cir. 2003) (internal quotation marks and citation omitted).

Hemmings's arguments that the district court should have declared a mistrial are unavailing. The district court was, as it must be, appropriately reluctant to intrude into jury deliberations, even when potential improprieties had been suggested. <u>See</u> <u>United States v. Thomas</u>, 116 F.3d 606, 618 (2d Cir. 1997). Moreover, the possible juror impropriety that Hemmings now alleges related to a count on which the jury ultimately did not convict. The government represents that it will not retry Hemmings on that count. Thus, any jury impropriety – if any such impropriety existed – had and will have no prejudicial effect on Hemmings. The district court thus did not abuse its discretion in denying Hemmings's motion for a mistrial.

Nor did the district court abuse its discretion with respect to its modified <u>Allen</u> charge. The modified charge was sufficiently cautious and in line with the Supreme

7

Court's and our instructions on such charges. While the Supreme Court originally permitted such charges to sharply contrast the "minority" and "majority" positions in a deadlocked jury and encouraged district courts to instruct a minority juror to "consider whether his doubt was a reasonable one," Allen, 164 U.S. at 501, the Supreme Court's and our more recent cases instruct district courts to address deadlocked juries with more caution. Lowenfield v. Phelps, 484 U.S. 231, 238 (1988); see also Spears v. Greiner, 459 F.3d 200, 205-6 (2d Cir. 2006); Henry, 325 F.3d at 107; Smalls v. Batista, 191 F.3d 272, 280 (2d Cir. 1999). The district court amply demonstrated this caution. Its charge did not target dissenting jurors, and repeatedly emphasized to the jury that the "verdict must reflect the conscientious judgment of each juror." Thus, the modified Allen charge conforms to our requirements in Spears, Henry, and Batista.

(5) Finally, Hemmings argues that the district court erred by admitting testimony regarding Hemmings's post-indictment statements to a witness who was cooperating with the government in a separate investigation. This argument misunderstands the law governing the post-indictment interaction between defendants and the government. Hemmings's statements came to the government's attention without planning or intention. "Since 'the Sixth Amendment is not violated whenever – by luck or happenstance – the State obtains incriminating statements from the accused after the right to counsel has attached,' a defendant does not make out a violation of that right simply by showing that an informant . . . reported his incriminating statements to the police." Kuhlmann v. Wilson, 477 U.S. 436, 459 (1986), quoting Maine v. Moulton, 474 U.S. 159, 176 (1985).

8

Rather, "[a] Sixth Amendment violation occurs . . . only if the government has taken an action that was designed deliberately to elicit incriminating remarks." United States v. Edwards, 342 F.3d 168, 182 (2d Cir. 2003) (internal quotation marks omitted). Here, the district court found, after a hearing, that the informant accidentally encountered Hemmings, who the informant did not know was a subject of government interest, and that Hemmings then made incriminating statements without prompting from the informant. These findings were not clearly erroneous and fully support the district court's conclusion that Hemmings's rights were not violated.

II. Phillips

Phillips makes two arguments: (1) that no rational juror could have found that his guilt was established beyond a reasonable doubt; and (2) that the district court committed reversible error by permitting a witness to identify Phillips in an arguably suggestive surveillance photograph after the same witness had been unable to identify Phillips in open court.

The first argument is plainly without merit. In order to reverse a jury's conviction, the evidence must be "nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt." United States v. Wexler, 522 F.3d 194, 209 (2d Cir. 2008) (citation omitted). In Phillips's case, a jury could reasonably have concluded that the witness's failure to identify Phillips in open court meant that the same witness's identification of Phillips from a photograph was not credible. But it was also reasonable for the jury to reach the contrary conclusion: that the failed identification was

9

understandable in light of the facts that the witness had never met the defendant prior to the transaction, that the defendant's appearance had changed, that four years had intervened between the transaction and the trial, and that the witness's view of the defendant was partially obstructed. Moreover, the ample other evidence against Phillips – including the surveillance photographs, the recording of the negotiation of the crack sale, and the agents' testimony – provided a sound basis from which a reasonable jury could have concluded that Phillips was guilty of the relevant charges. Phillips therefore has not borne the "heavy burden" that those who challenge the sufficiency of the evidence supporting their conviction must bear. United States v. Desena, 260 F.3d 150, 154 (2d Cir. 2001).

Finally, Phillips argues that the district court erred by permitting the government's witness to identify him in arguably suggestive surveillance photographs. We review a "district court's determination as to the admissibility of identification evidence" for "a showing of clear error." United States v. Jakobetz, 955 F.2d 786, 803 (2d Cir. 1992). We will reverse a district court's determination that identification evidence is admissible if the police procedures that produced the identification evidence are "so impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification." Simmons v. United States, 390 U.S. 377, 384 (1968). Even so, "where the circumstances of either a pretrial or an at-trial identification are suggestive, reliability is the linchpin for determining admissibility." United States v. Matthews, 20 F.3d 538, 547 (2d Cir. 1994).

10

The district court was appropriately cautious about the photographic identification, and took care to ensure that the procedure offered by the government was not unduly suggestive. Though flawed, the first photograph presented to the witness – which depicted both Hemmings and Phillips, with only Phillips facing forward – was not unduly suggestive. But whether or not the photograph was suggestive, there was ample evidence to support the reliability of the identification. Under the leading Supreme Court case, Neil v. Biggers, 409 U.S. 188 (1972), a district court must consider several factors when determining the reliability of an identification, including "the opportunity of the witness to view the criminal at the time of the crime, the witness's degree of attention, the accuracy of the witness's prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation." Id. at 199-200.

"[R]eliability is the linchpin in determining the admissibility of identification testimony," Manson v. Brathwaite, 432 U.S. 98, 114 (1977), and the district court – in extensive conversations with counsel at sidebar – determined that identification here was sufficiently reliable to justify its admission. The witness had participated in Hemmings's trial five months before, and had described the individual role of both Hemmings and Phillips at that time, where he had already seen surveillance photographs of both Hemmings and Phillips. The witness had also identified Hemmings in-court during that trial. Given his proximity to Phillips during the transaction, we cannot say that the district court clearly erred by finding that the witness's identification of Phillips from the

11

surveillance photograph was sufficiently reliable to warrant admission of the identification testimony.

In any event, there was no dispute that Phillips was a participant in the transaction in question. The jury was able to infer that for themselves from the surveillance photographs which of the two individuals depicted occupied which seat in the car during the conversation. The witness's inability to recognize Phillips in court as he appeared at the time of trial does not undermine his ability reliably to recall what role each participant shown in the photos played in the transaction. The jurors, who had observed this testimony, including the failed identification, were fully able to evaluate the parties' arguments regarding the credibility of the witness.

We have considered the appellants' remaining arguments and find them to be without merit. For the foregoing reasons, the judgments are AFFIRMED.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

12